UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP J. HOLMES,

                              CASE NO. 16-CV-11538

           Plaintiff,             HON. GEORGE CARAM STEEH

v.

AETNA LIFE INSURANCE
CO. and UNITED PARCEL
SERVICES OF AMERICA
WELFARE PLAN,

           Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. 32)
AND DENYING PLAINTIFF'S MOTION FOR
<u>JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. 31)</u>

     Plaintiff Philip J. Holmes alleges that defendants Aetna Life Insurance

Co. ("Aetna") and the United Parcel Services of American Welfare Plan

("the Plan") wrongfully denied his claim for long term disability ("LTD")

and/or short term disability ("STD") benefits under an employee benefit plan

governed by the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1132(a)(1)(B).  The parties filed cross motions for judgment on the

Administrative Record, which the court has duly considered.  For the

reasons set forth below, defendants' denial of Holmes' claim for disability

benefits shall be AFFIRMED as Holmes' claim is time-barred and

defendants' decision was not arbitrary and capricious where Holmes failed to submit objective clinical medical information in support of his claim.

## I. Findings of Fact

Holmes worked for United Parcel Service of America, Inc.("UPS") and was covered under The Flexible Benefit Plan for employees of UPS ("the Plan"). STD benefits were offered under a self-funded plan administered by Aetna. LTD benefits provided under the Plan were insured by Group Insurance Policy No. GP-839230-GID ("the Policy"), issued by Aetna to the Policyholder, UPS.

Under the Plan and Summary Plan Description ("SPD"), Aetna was designated as claims fiduciary and UPS as plan administrator. The Plan provides that UPS has "the exclusive right and discretion to interpret the terms and conditions of the Plan and to decide all matters arising with respect to the Plan's administration and operation (including factual issues)." (AR 193). The Plan designates Aetna as the claims fiduciary for benefits provided under the Policy, and grants Aetna full discretion and authority to determine eligibility for LTD benefits and to construe and interpret all terms and provisions of the Policy. (AR 145).

The STD plan provides for benefits for six months if Holmes is unable to perform the material and substantial duties of his regular occupation.

The Aetna policy provides for LTD benefits after the Elimination Period if Holmes cannot perform the material duties of his own occupation, for the first 24 months and then past 24 months if Holmes is unable to work at any reasonable occupation.  Benefits are payable to the maximum benefit period, age 65, except that benefits for mental health or psychiatric conditions are limited to 24 months.

For STD benefits, the Plan defines an employee as disabled when an employee is "unable to perform the material and substantial duties of [his or her] regular occupation because of an illness or injury."  (AR 119, 124).  In order to qualify for STD benefits, an employee must provide "objective clinical medical information . . . that supports your disability."  (AR 119).  The Plan provides that STD benefits will be terminated if an employee fails "to provide objective clinical documentation requested" by the administrator.  (AR 122,127).

The Plan provides for two levels of appellate review for the denial of STD benefits: first, an employee has the right to file a first-level appeal with Aetna within 180-days of the denial; and second, an employee may file a second-level appeal with the UPS Claims Review Committee within 60-days of denial of the first-level appeal.  Any legal action must be filed within six months from the date a determination is made.

The Plan defines disability for LTD coverage as follows;

**Test of Disability**
From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

* You cannot perform the **material duties** of your **own occupation** solely because of an **illness, injury** or disabling pregnancy–related condition.

(AR 1461) (emphasis in original).  "Material duties" and "own occupation"

are defined as follows:

**Material Duties**
Duties that:

* Are normally needed for the performance of your **own occupation**; and

* Cannot be reasonably left out or changed.  However to be at work more than 40 hours per week is not a material duty.

**Own Occupation**
The occupation that you are routinely performing when your period of disability begins.  Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

* For your specific employer; or

*At your location or work site; and

*without regard to your specific reporting relationship.

(AR 1475) (emphasis in original).  The LTD policy also provides for benefits

of successive disabilities without a new Elimination Period, arising out of

the same or related impairments if within six months:

**If You Become Disabled Again (Successive Disabilities)**

Once you are no longer disabled and your monthly benefit payments have ended, any new disabilities will be treated separately.  However, 2 or more separate disabilities due to the same or related causes will be deemed to be one disability and only one Elimination Period will apply if your disability occurs again within 6 months or less of continuous **active work** from when the prior disability ended.

(AR 1463) (emphasis in original).  The LTD policy also provides for continuing LTD benefits if a person works at less than his or her pre-disability earnings while disabled.  (AR 1462).

Holmes began working for UPS in 2004.  On February 1, 2014, Holmes began working as an On Road Supervisor.  Prior to that, he worked as an Industrial Engineer.  The On Road Supervisor position had a physical exertional rating of heavy as it required lifting, pushing and pulling equipment and packages weighing up to 70 pounds and assisting in moving packages up to 150 pounds.  The position paid $71,808 per year. Ten days after his promotion to On Road Supervisor, on February 11, 2014, Holmes applied for STD benefits based on his absence from work beginning on February 4, 2014.  Holmes had only been on the job as On Road Supervisor for three days when he allegedly became disabled. Holmes applied for benefits based on right ankle and foot and knee pain which was related to right ankle triple fusion surgery he had ten years earlier in 2004, as well as because of depression.  Defendants awarded

Holmes STD benefits from the period of February 4, 2014 until June 30, 2014.  Holmes' doctor indicated that he expected Holmes to return to work on May 5, 2014.  On June 23, 2014, Aetna told Holmes that it needed updated records by June 30, 2014, or the claim would be closed.  Aetna then granted Holmes a one week extension to do so, but Holmes failed to submit any additional records.   Aetna cut off STD benefits on June 30, 2014 based on a lack of clinical evidence to support his continued disability.  Aetna's letter cutting off disability benefits advised Holmes of his right to appeal the decision within 180 days.   On July 21, 2014, Holmes timely appealed that decision.  Aetna affirmed its denial by letter dated October 2, 2014.  That letter specifically advised Holmes of his right to seek a second-level of appellate review within 60-days.

Holmes did not timely file a second-level appeal of that decision. Holmes attempted to do so by filing a letter with Aetna 95-days later, on January 5, 2015, which was outside the 60-day window for perfecting a second-level appeal.  Holmes' attorney also attempted to submit further untimely appeals in March and April, 2015.  Holmes' counsel's March 13, 2015 letter requested certain Plan and claim documents. On April 2, 2015, Aetna provided Holmes' counsel with a copy of all documents relevant to plaintiff's STD claim, including a copy of the LTD plan and application and

reiterated that requests for copies of the STD plan short documents needed to be addressed to UPS. On April 27, 2015, Holmes' counsel requested Plan documents from UPS which UPS provided on May 19, 2015.

On June 19, 2015, the UPS Claims Review Committee upheld Aetna's decision that Holmes' second-level appeal was time-barred. The Committee notified Holmes that its denial was the Claims Review Committee's final decision and that any lawsuit under ERISA "must be filed within six months of your having received this decision." Holmes did not file his lawsuit until ten months later on April 28, 2016.

On October 30, 2014, Holmes returned to work as a Financial Analyst, a position meant to accommodate his physical limitations related to his foot and ankle problems. That position paid $48,256 per year, about $23,000 less than the On Road Supervisor position. Holmes did not file a claim for residual disability benefits based on his decreased earnings as a Financial Analyst. The new position was mostly sedentary, although during peak season the position would be classified as medium, and required a high level of cognitive ability, concentration, and judgment.

Forty days after beginning the position as Financial Analyst, on December 9, 2014, Holmes applied for STD benefits a second time based on stress, panic, and anxiety. (AR 1883-84). He later submitted

documentation in support of that claim which also included information about his foot and ankle pain related to osteoarthritis.[1]  In support of his claim, he relied on the report of his psychiatrist, Dr. Chalakudy Ramakrishna, who indicated that Holmes would be off work from December 9, 2014 to December 23, 2014.  Aetna paid him STD benefits from December 10, 2014 to December 23, 2014.  Aetna required additional documentation to support continued disability benefits beyond that date.

On January 20, 2015, Aetna informed Holmes that it was denying benefits as of December 23, 2014 because of a lack of medical documentation to support a disability beyond that date.  On January 21, 2015, Holmes submitted additional documentation from his treating psychologist, Dr. Allen Cushinberry, but Aetna found that documentation to be deficient because it was not supported by clinical data.  Holmes timely appealed that decision twice in the two-level appeal process available to him, and submitted additional documentation in support of his claim. Among other things, Holmes relied upon progress notes from Dr. Cushinberry and treating psychiatrists Dr. Leon Rubenfaer and Dr. Ramakrishna, as well as reports from his family practice physician Dr. Karman Zacharia, and documentation including MRIs and x-rays of his foot

---

[1] Defendants submit that the STD claim was based on mental impairments only and not the foot and ankle problems.

and ankle problems.  By letter dated September 25, 2015, Aetna denied

Holmes' appeal of the denial of STD benefits.  In reaching its decision,

Aetna relied on an independent peer review by a physician specializing in

physical medicine and rehabilitation/pain management, two physician

reviewers specializing in psychology, and a review by a physician

specializing in orthopedic surgery.  The independent peer reviewers

determined that Holmes had failed to substantiate a functional/

psychological impairment that prevented him from performing his job

duties.  They further found that although Holmes had a history of right foot

surgery and treatment, the clinical documentation did not provide abnormal

physical findings or diagnostic test results to support a functional

impairment that would prevent him from performing the core elements of

his job as Financial Analyst.

Holmes filed a second level appeal which was considered by the UPS

Claims Review Committee which upheld the denial of benefits.  The

Committee considered the documentation submitted by Holmes and two

independent peer reviews by board certified doctors in psychiatry and

orthopedic surgery.  The Committee found that Holmes' documentation as

to his mental limitations consisted primarily of his own subjective

complaints and lacked sufficient clinical findings, test results, observed

behaviors or other information to document his complaints and to sufficiently address his ability to function in the workplace. The Committee criticized Holmes' application for benefits because there were insufficient clinical findings to support his claim, and he failed to document his claims of emotional distress with any formal neuropsychological testing.

On April 16, 2015, Holmes filed a claim for LTD benefits which Aetna denied by letter dated September 25, 2015, for lack of supporting documentation effective June 10, 2015. Holmes timely appealed the denial twice, and both times Aetna affirmed the denial of Holmes' claim for LTD benefits based on a lack of supporting documentation as there were no formal mental status examinations or standardized clinical data over time. In addition, although the independent doctor who reviewed Holmes' claims of pain in his left foot and ankle confirmed Holmes would have some limitations in standing, walking and lifting, he determined that these restrictions would not limit Holmes in performing the sedentary duties of Financial Analyst. In addition, two independent peer review physicians, Dr. Philp Marion, a pain management specialist, and Dr. Martin Mendelssohn, orthopedic surgeon, determined that Holmes' ankle and foot impairment would not prevent him from performing medium work. Aetna affirmed the denial of Holmes' claim for LTD benefits on March 17, 2016. On May 5,

2016, Aetna received Holmes' second appeal of the denial of LTD benefits and Aetna affirmed the denial of LTD benefits on August 19, 2016. Holmes filed the instant lawsuit on April 28, 2016.

## II. Standard of Review

This matter is before the court on the parties' cross motions for entry of judgment on the Administrative Record. A district court reviewing a decision regarding benefits under ERISA is to "conduct a . . . review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir. 1998). The court may consider the parties' analysis of the evidence, but may not admit or consider any evidence not presented to the administrator. *Id.*

When a benefits plan accords discretionary authority to the claims administrator to make determinations with respect to benefits eligibility, the administrator's determination is subject to the "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 107 (1989). Holmes does not dispute that the discretionary standard of review applies to his STD claim to the extent that claim is relevant to the court's analysis. Here, there is no dispute that the ERISA plan at issue vests the plan administrator discretion in interpreting the terms of the plan

and in making benefits determinations.  Nevertheless, Holmes argues that

the *de novo* standard of review should apply to his claim for LTD benefits

because Michigan law prohibits discretionary grants of authority for all

policies issued after June 1, 2007 pursuant to Mich. Adm. Code §

500.2202.  Michigan law, however, does not govern this matter as the

policy provides that Georgia law applies.

Application of Georgia law is appropriate under the policy's choice of

law provision and conflict of law analysis because the master group policy

was issued to UPS, a corporation with its principal place of business in

Georgia, and was delivered in Georgia.   Michigan's Insurance Code does

not apply to master policies "issued to an employer in another state for the

benefit of employees residing in this state."  Mich. Comp. Laws. §

500.402b(d).  Accordingly, Georgia law applies, the discretionary grant of

authority to the plan administrator to determine eligibility for benefits is

enforceable, and thus, the arbitrary and capricious standard of law governs

this court's analysis of whether defendants' denial of benefits shall be

affirmed.

Under this standard, the administrator's plan interpretation and

benefits determination can be overturned only upon a showing of internal

inconsistency, bad faith, or some other ground calling such determination

into question. *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 695 (6th Cir. 1989). "'[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (quoting *Davis*, 887 F.2d at 693). Plaintiff bears the burden of proving that defendants' denial of benefits was arbitrary and capricious. *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011). Under this standard, a reviewing court should "uphold the plan administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Cooper v. Life Ins. Co.*, 486 F.3d 157,165 (6th Cir. 2007) (quoting *Glenn v. MetLife Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)). Substantial evidence supports a plan administrator's decision if the evidence is "'rational in light of the plan's provisions.'" *Univ. Hosps. Of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)). The arbitrary and capricious standard is highly deferential but does not require the court to merely rubber stamp the administrator's decision. *Glenn*, 461 F.3d at 666.

Holmes argues that Aetna has a conflict of interest which requires the court to consider that factor in determining whether there has been an abuse of discretion. *MetLife Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Judge v. MetLife Ins. Co.*, 710 F.3d 651, 663-64 (6th Cir. 2013). The Sixth Circuit has held that the court may consider an inherent conflict of interest that may exist when a plan administrator both decides what benefits are covered and pays those benefits. *See Peruzzi v. Medical Summa Plan*, 137 F.3d 431, 433 (6th Cir. 1988) (plan administrator's inherent conflict weighed when applying abuse of discretion standard). This requirement only applies, however, when there is "significant evidence" that the insurer was motivated by self-interest. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Holmes has not come forward with significant evidence that Aetna's decision denying Holmes' application for disability benefits was motivated by self-interest. Even if Holmes could demonstrate that Aetna has a conflict of interest, its decision was not arbitrary and capricious.

### III. Analysis & Conclusions of Law

A. **Holmes' ERISA Denial of Benefits Claims for his Alleged Inability to Perform On Road Supervisor Position is Time-Barred**

Defendants contend that Holmes' claim for STD benefits must be denied because he failed to exhaust his administrative remedies, and this

lawsuit is time-barred because Holmes did not file his Complaint within six months of the final decision by the UPS Claims Review Committee. In his response, Holmes concedes that he did not timely file his second-level administrative appeal of the denial of his original claim for STD benefits. Thus, he states that he is not pursuing the six-week balance of benefits under his first STD claim. Holmes responds that he is only pursuing a claim for LTD benefits.

Holmes asserts that when he returned to work in the Financial Analyst position for 40-days, he ceased working again for the same reason that he stopped working the prior February: ankle/foot impairment and depression and anxiety. Holmes claims that his second claim for STD benefits should have been construed as a claim for LTD benefits because it arose out of the same conditions as his original STD claim. He argues that there was only one disabling condition and thus, should have been one Elimination Period only. His STD claim arose on February 4, 2014 and thus, Holmes contends it should have terminated 180-days later on August 4, 2014 when LTD benefits should have begun.

Holmes' position that both his STD and LTD claims were based on one continuous period of disability is fatal to his ERISA denial of benefits claims here. The Summary Plan Description ("SPD") is unequivocal that

LTD benefits are only available to employees "who have exhausted their STD benefits," in other words, who are "no longer eligible to receive STD benefits because [they] have received the maximum STD benefit available under the Plan." (AR 124). The SPD further provides, "If your STD benefits are denied for any reason prior to receiving the maximum benefit, you have not 'exhausted' your STD benefits and you are not eligible for LTD benefits." *Id.* Because Holmes' claim for STD benefits was terminated prior to his receiving the maximum benefit, he did not exhaust his STD benefits, and was not eligible for LTD benefits.

Holmes argues that the SPD's requirement that a participant first exhaust STD benefits before he is eligible for LTD benefits is not enforceable because it allegedly conflicts with the Plan. While Holmes is correct that the Plan specifically provides that in the event of a conflict between the SPD and the Plan, the Plan controls (Plan, § 5.03, AR 188), it is not clear that there is any conflict. The Plan provides that "All claims for benefits under the Plan shall be made, processed and paid in accordance with the terms and conditions of the SPD." (Plan, § 5.06(b), AR 189). The Plan further provides:

> 5.07 Claims Procedure and Appeal of Benefit Denials. The
> process by which a claim for benefits shall be handled by the
> Committee and the process by which a participant may appeal

the denial of a claim for benefits are set forth in the SPD and
incorporated herein by reference.

(Plan, § 5.07, AR 189).

Holmes argues that he need not exhaust his STD benefits under the

Aetna LTD policy, but need only be disabled for the Elimination Period.

Specifically, Holmes relies on the following provisions set forth in the

*Booklet-Certificate*[2]:

### Long Term Disability Benefit Eligibility

You will be considered disabled while covered under this Long
Term Disability ("LTD") Plan on the first day that you are
disabled as a direct result of a significant change in your
physical or mental conditions and you meet all of the following
requirements:

\*      You must be covered by the plan at the time you become
disabled; and

\*      You must be under the regular care of a **physician**.  You will be
considered under the care of a **physician** up to 31 days before you
have been seen and treated in person by a **physician** for the **illness,
injury** or pregnancy-related condition that caused the disability; and

\*      You must be disabled by the **illness, injury,** or disabling
pregnancy-related condition as determined by **Aetna** (see *Test of
Disability*).

### When Benefits Are Payable

---

[2] The *Booklet-Certificate* "is part of the *Group Insurance Policy* between
Aetna Life Insurance Company and the Policyholder.  . . . Aetna agrees
with the Policyholder to provide coverage in accordance with the
conditions, rights, and privileges as set forth in th[e] *Booklet-Certificate*."
(AR 1455).

Once you meet the LTD **test of disability**, your long term disability benefits will be payable after the Elimination Period, if any, is over.  No benefit is payable for or during the Elimination Period.  The Elimination Period is the amount of time you must be disabled before benefits start.  The Elimination Period is shown in the **Schedule of Benefits.**

(AR 1460) (emphasis in original).  The Elimination Period as set forth in the

*Schedule of Benefits* is defined as "The first 26 weeks of a period of

disability or later of the exhaustion of STD benefits."  (AR 1493).  Because

it is undisputed that Holmes never exhausted his STD benefits, the first

definition of the Elimination Period applies and Holmes must satisfy the 26-

week Elimination Period.  Holmes argues that he was disabled because of

the foot/ankle and mental impairments as of February 4, 2014 at which time

he could no longer perform the On Road Supervisor position.  Holmes

argues that his Elimination Period ended on Monday, August 4, 2014 at

which time he alleges LTD benefits would begin.

The next question is whether Holmes may challenge the denial of his

second request for STD benefits here.  To the extent he claims he could

not perform the duties of On Road Supervisor, Holmes is time-barred from

pursuing such a claim.  While ERISA does not provide a statute of

limitations period for denied benefit claims, the Sixth Circuit has held that a

limitations period set forth in the Plan itself may be enforced where the

period is reasonable.  *See Med. Mut. of Ohio v. K. Amalia Enters.*, 548 F.3d

383, 390 (6th Cir. 2008). The Sixth Circuit has found that UPS's six-month limitations period is reasonable, and has affirmed the dismissal of an employee's claim for benefits brought outside the six-month window. *Claeys v. Aetna Life Ins. Co.*, 548 F. App'x 344, 346 (6th Cir. 2013).

Here, Holmes concedes that his second claim for STD benefits brought in December, 2014, was really a continuation of his original STD claim brought in February, 2014, as it arose out of the same physical and mental conditions which allegedly disabled him in the first place. Thus, Holmes contends that in determining whether defendants wrongfully denied him LTD benefits, this court should consider his position as the On Road Supervisor and not the Financial Analyst position he was assigned to in December, 2014 at the time he filed his second STD claim. Holmes claims he was still disabled from the On Road Supervisor position and accepted the Financial Analyst position as an accommodation. But when Holmes returned to work as a Financial Analyst, Holmes never informed defendants that he was continuing to seek disability benefits for his inability to perform the On Road Supervisor position at the time he filed his second STD claim. When he returned to work in October, 2014 as a Financial Analyst, he did not file a claim for residual benefits at that time. Also, when he filed his claim for STD benefits in December, 2014, he listed his occupation as

Financial Analyst, not On Road Supervisor, and listed his first day of absence as December 10, 2014, not the February 4, 2014 date he now claims was the onset of his disability.

Holmes argues that there was only one disabling condition and thus, should have been one Elimination Period only under the Plan's successive disabilities provision which provides:

> **If You Become Disabled Again (Successive Disabilities)**
>
> Once you are no longer disabled and your monthly benefit payments have ended, any new disabilities will be treated separately. However, 2 or more separate disabilities due to the same or related causes will be deemed to be one disability and only one Elimination Period will apply if your disability occurs again within 6 months or less of continuous **active work** from when the prior disability ended.

(AR 1463). Defendants dispute that the successive disabilities provision would apply characterizing the February, 2014 application as arising solely out of Holmes' foot and ankle impairment, and the December, 2014 application arising solely out of Holmes' depression and mental impairment. Having reviewed the Administrative Record, the court determines that Holmes is correct and both benefit applications arose out of both physical and mental impairments. But it would not be clear to defendants that Holmes was claiming the same disability in his second STD application or that defendants should have construed that application as a disability based on his On Road Supervisor position. On his second STD

application, Holmes identified his occupation at the time of disability as Financial Analyst, described his position as sedentary, identified his disability as stress, panic and anxiety, and stated that his first date of absence was December 10, 2014. (AR 1883-84). Because Holmes did not identify his position at the time of the onset of his disability as On Road Supervisor (AR1883), defendants were not on notice that was the basis for his second STD application and Holmes cannot recover on that theory now.

In addition, even if Holmes' second STD application could be construed as a claim for disability with an onset date of February 4, 2014 when he was last employed as an On Road Supervisor, that claim is time-barred. Holmes cannot circumvent the limitations period for bringing an ERISA claim as set forth in the Plan by refiling a duplicative claim based on the same uninterrupted disability later. Such a result would unravel the entire administrative process for the adjudication of claims by allowing participants to default on their appellate rights, miss the filing deadline for bringing an ERISA suit, and merely refile the same claim again. Holmes' remedy if defendants wrongfully denied his claim for STD benefits related to the On Road Supervisor position was to pursue his administrative appellate remedies. Holmes failed to do so. Accordingly, Holmes' ERISA

claim for the denial of benefits as On Road Supervisor must be dismissed as time-barred.

The Administrative Record in this case is complex so the court attempts here to summarize Holmes' three applications for disability benefits. First, he applied for STD benefits on February 11, 2014 claiming that his ankle/foot impairment and depression prevented him from performing the On Road Supervisor position – a position he held for three days prior to going off work. He does not dispute that he is time-barred from seeking review of that claim. Second, he filed a second claim for STD benefits on December 9, 2014 claiming that his ankle/foot and depression and anxiety prevented him from performing the Financial Analyst position. In the papers pending here, Holmes asserts that the December, 2014 STD application should be construed as an application for LTD benefits arising out of his alleged inability to perform the On Road Supervisor position. Such a claim would be redundant of his original STD benefit claim. Holmes cannot circumvent the statute of limitations period which applied to his original STD claim by refiling the same claim outside the limitations period. Thus, his second STD claim to the extent it is based on his occupation as On Road Supervisor is also time-barred.

Third, Holmes filed a claim for LTD benefits on April 16, 2015 claiming that his occupation was the On Road Supervisor position. At the time Holmes filed his LTD benefits claim, he had not worked as an On Road Supervisor for over fourteen months and had not exhausted his STD benefits. Holmes asserts that the Elimination Period ended on August 4, 2014. But the Plan requires that a claim for LTD benefits be filed within 90-days after the end of the Elimination Period. (AR 1471). Holmes failed to file his claim for application in that time period. Thus, Holmes' claim for LTD benefits for his alleged inability to work as On Road Supervisor is also time-barred.

The court recognizes that defendants denied Holmes' April, 2015 application for LTD benefits on the merits and not as untimely. However, defendants construed his claim for LTD benefits as arising out of his occupation of Financial Analyst position, and not his position as On Road Supervisor. Significantly, at the time Holmes filed his second STD claim for his absence beginning on December 10, 2014, he had been performing the position of Financial Analyst for over a month yet it had been over ten months since he last performed the On Road Supervisor position, a position that he only held for three days. On his second STD application,

he did not even identify the On Road Supervisor position as the occupation he was performing when his disability began.

In the papers now before this court, Holmes has represented that he bases his disability claim here on his occupation as On Road Supervisor. In support of this claim, he argues that there is no durational requirement that he occupy the On Road Supervisor position for more than three days in order for that job classification to govern his application for disability benefits. He cites to a number of cases for the proposition that the court cannot consider an employee's inability to perform the accommodated position but must consider the position held at the onset of the disability.

Those cases primarily involve an employee with a long career in a certain position who is later transferred to a temporary position meant to accommodate a disability. *See Lehman v. Exec. Cabinet Salary Continuance Plan*, 241 F. Supp. 2d 845, 848 (S.D. Ohio 2003) (plaintiff's "regular occupation" at time of disability was executive secretary position which she held for over 25 years before defendant transferred her to temporary position meant to accommodate her disability); *Peterson v. Continental Cas. Co.*, 77 F. Supp. 2d 420, 422-24, 427 (S.D.N.Y. 1999) (plaintiff's "regular occupation" at time of disability was the position he had held for many years prior to his transfer to a temporary position meant to

accommodate his disability).  Those cases are inapposite as Holmes' claim for benefits arising out of his alleged disability with an onset date of February 4, 2014 is clearly time-barred.

However, Holmes argues in the alternative, that even if he did not have one continuous disability, he has shown that he was disabled from performing the Financial Analyst position beginning in December, 2014.  If Holmes' disability relates solely to his alleged inability to perform the Financial Analyst position beginning in December, 2014, that claim would not be time-barred.  Given Holmes' alternative pleading, the court next considers whether the denial of benefits based on the Financial Analyst position was arbitrary and capricious.

## B.    Defendants' Denial of Benefits Was Not Arbitrary and Capricious

Defendants' decision that Holmes' ankle and foot problems and anxiety and depression would not prevent him from performing the sedentary Financial Analyst position is reasonable, based on substantial evidence, and is not arbitrary and capricious.  Holmes argues pain in his foot/ankle and depression and anxiety would have prevented him from performing the Financial Analyst position.  The court considers the alleged physical and mental impairments below.

First, as to Holmes' complaints of foot and ankle pain, defendants employed a pain management peer reviewer, Dr. David Hoenig, who considered the documentation provided by Holmes.  The reviewer found that there were restrictions and limitations resulting in a functional impairment from December 10, 2014 through September 19, 2015. Specifically, Dr. Hoenig found that Holmes could stand and walk up to two hours, could occasionally lift and carry 50 pounds, could frequently lift and carry up to 25 pounds, can occasionally crawl, but could never climb, stoop, kneel, or crouch.  (AR 1490).  Because the Financial Analyst position was determined to be a sedentary position as determined by a vocational specialist, defendants determined that Holmes could have completed the duties of his Financial Analyst position despite the verified limitations posed by his foot/ankle impairment.  Holmes contends that the Financial Analyst position was a medium exertional position which would require him to bend, stoop/squat, crouch, kneel, climb stairs and walk intermittently throughout the work day, work varying shifts and additional hours and/or overtime, grasp, lift (from floor to shoulder height), push, pull, carry and manipulate equipment, packages or parts, and perform complex mental work requiring judgment and concentration.  To support these alleged job requirements, Holmes relies on a description of a number of

sedentary type administrative positions, (AR 1311) but that document does not specifically identify the position of Financial Analyst.

According to Holmes' own STD application, his position was sedentary (AR 1883-84), and in his application to another insurer, he described his position as involving 99 percent sitting, .5 percent standing, and .5 percent walking. (AR 1615). The Administrative Record is clear that the Financial Analyst position was classified as primarily sedentary but occasionally medium physical exertional level during peak season. (AR 983, 1803, 1964, 2006). Holmes relies on the Dictionary of Occupation Titles for the definition of medium work which is defined as requiring "exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects)." (Doc. 31, Ex. 9 at 5-6). Even under the occasionally medium classification, Holmes has not shown that his foot and ankle impairment would prevent him from carrying out the duties of Financial Analyst.

Defendants' independent peer reviewers Dr. Martin Mendelssohn, an orthopedic surgeon, and Dr. Philip Marion, a specialist in pain management, considered Holmes' alleged foot and ankle impairment and found that his physical limitations in this area would not prevent Holmes

from medium work.  (AR 970-975, 1127-1130).  Specifically, Dr. Marion

found that:

> Mr. Holmes' assertion of function/occupation incapacity as a
> result of a physical impairment is not supported by the clinical
> records.  Regarding his right ankle, Mr. Holmes underwent a
> triple arthrodesis years ago and subsequently resumed his
> regular occupation.  Radiological studies do no demonstrate
> evidence of acute or recurrent disease.  Physical examination is
> without significant change noting the expected decreased range
> of motion consistent with the prior surgery.  However, Mr.
> Holmes remains fully ambulatory without the use of an assistive
> device.   . . . In addition, his complaints of severe pain were
> inconsistent with his reported non-use of analgesic
> medications.  . . . From a physical medicine and
> rehabilitation/pain management perspective as well as
> reasonable medical certainty, there remains no specific
> underlying objective physical impairment precluding full time
> medium capacity for the time period under review.

(AR 974-75).

Holmes argues that all of the examining physicians concluded that he

could not perform the On Road Supervisor position, but Holmes relies

primarily on his family practice physician Dr. Zakaria to support his claim

that his foot and ankle impairment would have prevented him from

performing sedentary work on a sustained basis.  The court has reviewed

Dr. Zakaria's report and it is not clear that his diagnosis of osteoarthritis of

the right foot and ankle would constitute a disabling condition which would

prevent Holmes from performing a sedentary position.  Dr. Zakaria's

conclusions were not based solely on Holmes' physical impairment, but

were based on his conclusions about Holmes' depression.  (AR 422-26).  It
is unclear from Dr. Zakaria's report whether he was concluding that
Holmes' foot and ankle pain, standing alone, would have prevented him
from performing the duties of Financial Analyst.  His report suggests it was
only the combination of physical and mental impairments which prevented
him from performing sedentary work.   In other words, Dr. Zakaria's opinion
is not necessarily in conflict with defendant's reviewing physician's
determination that his foot and ankle pain would not disable him from
performing sedentary work or even medium work.  Under these
circumstances, the court need not give greater weight to Holmes' treating
physician than to the conclusions of defendants' reviewing physicians.  *See
Evans v. UNUM Provident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006).  In
sum, defendants' determination that Holmes' foot and ankle impairment
would not prevent him from performing the sedentary Financial Analyst
position with occasional medium work during peak season, is supported by
substantial evidence.

Second, the court considers the reasonableness of defendants'
determination that Holmes' mental impairments would not prevent him from
carrying out the functions of the Financial Analyst position.  Defendants'
determination that Holmes' anxiety and depression was not so severe as to

render him disabled from work was not arbitrary and capricious where Holmes' treating psychologists failed to support their conclusions with objective clinical evidence.  Over the course of Holmes' application for LTD benefits and two levels of administrative appellate review, five independent peer reviewers considered the reports submitted by Holmes' treating psychologists and psychiatrists and concluded that they failed to support his claim of disability.[3]  The reviewing psychologists and psychiatrists noted there was no objective documentation nor did Holmes' treating psychologists and psychiatrists administer "a formal mental status examination, or standardized and quantitate clinical data over time to substantiate evidence of cognitive decline, deficits or improvement."  (AR 808).  The Sixth Circuit has held that it is reasonable for a claim administrator to require objective evidence of a claimant's disability.  *See Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007).  In their letter denying Holmes' appeal of the denial of LTD benefits, Aetna noted that Holmes "has a long history of mental illness and has maintained employment.  There was no evidence of a significant change or even evidence that he attended group therapy as recommended."  (AR 808).

---

[3] Dr. Register, Psy.D.; Dr. Olivares, M.D., Board Certified in Psychiatry; Dr. Heydebrand, Ph.D, Clinical Psychology and Neuropsychology; Dr. Shallcross, Psy.D., Clinical Psychology and Neuropsychology; and Dr. Gay, Psy.D., Psychology and Neuropsychology.

One of the independent psychologists, Dr. John Shallcross, reviewed documentation submitted by Holmes, and interviewed Holmes' treating psychiatrist, Dr. Cushinberry. He summarized his telephone conversation with Dr. Cushinberry as follows:

> In my conversation with Dr.Cushinberry, he noted that the claimant's appearance was not as good as previously but he was not to the point of being disheveled or malodorous. His mood was guarded but calm. His attention and concentration were "okay." The doctor noted that the claimant's mental status overall was "depleted a little bit" but okay. The claimant was upset by his financial problems and by his situation with his employer as well as his physical condition, but it has not b[een] established that these stressors would result in a mental and nervous condition that would preclude work capacity or significantly restrict and limit functionality in regards to the claimant's mental and nervous state.

(AR 901). Dr. Shallcross also found that the lack of a referral or consideration of any higher level of care was inconsistent with a mental and nervous condition that was of a severity to keep Holmes out of work for over a year. (AR 901). Defendants found that there were inconsistencies in terms of the documented chronicity and severity of depression and stress as compared to Holmes' level of care. (AR 808).

The court recognizes that mental illness is not easily quantified by objective testing, but the independent psychologist's conclusions here were not simply based on a lack of objective evidence. Dr. Shallcross did more than simply perform peer review of documentation submitted by Holmes'

treating physicians. Dr. Shallcross interviewed Dr. Cushinberry and the results of that telephonic conversation were that Dr. Shallcross determined his anxiety and depression would not preclude him from work. Also, Aetna provided Holmes' treating psychiatrists, Dr. Ramakrishna and Dr. Cushinberry with a copy of the independent psychologist's assessment concluding Holmes was not totally disabled, and neither responded. Likewise, neither responded to his phone calls in early June, 2016.

Holmes claims that one of his doctors reported that he had a panic attack during an office visit. In fact, his doctor merely checked a box on a form that he had observed an attack, but there was no description of the duration, severity, or frequency of panic attacks that could be used to assess Holmes' functional capacity.

Having reviewed the Administrative Record, the court finds that defendants' decision that Holmes was not disabled was supported by the independent doctors' opinions which were rational under the circumstances. The reviewing psychologists rejected his treating psychologist's opinions of total disability as their opinions were not supported by objective clinical testing or evidence, were inconsistent with characteristics of depression, and did not comport with the standard of care which would have required a change in treatment where Holmes' condition

showed no improvement over the course of a year.  Accordingly,

defendants' denial of Holmes' claim for LTD benefits based on his disability

from the Financial Analyst position shall be AFFIRMED because it is

supported by substantial evidence.

**C.     Whether Defendants' Denial of Benefits was Arbitrary and Capricious Because Defendants Failed to Provide Plan Documents**

According to the First Amended Complaint, defendants are liable for

failing to provide Plan documents.  Specifically, Count I avers that

defendants are liable under 29 U.S.C. § 1132(c) which requires that a Plan

Administrator produce certain Plan documents upon request.  Count II

alleges that "Defendant breached its fiduciary duties to Plaintiff by not

providing the STD Plan and full information on the Plan and appeal

requirements."  (Am. Complaint ¶ 35).  Count IV alleges that "Defendant

failed to produce its full STD Plan, the Summary Plan Description and/or

the Short Term Disability Policy in response to Plaintiff's request."  (Am.

Complaint ¶ 40).  Defendants correctly argue that Aetna cannot be liable

for failing to produce Plan documents as it was the Plan fiduciary, not the

Plan administrator.  *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584

(6th Cir. 2002).  Holmes has not responded to this argument.   In addition,

the Administrative Record supports a finding that on April 2, 2015, Aetna

provided Holmes with all documents relevant to his claim, including a copy

of the LTD plan, and directed requests for other Plan documents to UPS. (AR 469-71).  Specifically, Aetna relies on a letter written to Holmes' counsel on that date which states, "Per your request, we have enclosed all documents relevant to your client's STD claim to which you are entitled under the Department of Labor (DOL) regulations, including a copy of the LTD plan and application."  (AR 469).  That letter further provided, "Please be advised that Plan documents will be provided at no cost.  However, this Information must be requested from UPS, since UPS retains the responsibility for providing Plan documents."  *Id.*  That letter advised Holmes' attorney of the exact address for UPS where any request for Plan documents should be sent.  *Id.*   The Administrative Record also supports a finding that UPS provided the STD Plan, the Summary Plan Description and the Short Term Disability Policy on May 19, 2015 and November 16, 2015.  (AR 1583, 2054).

In his Reply brief, Holmes argues that he was unaware of the successive disabilities and working while disabled provisions of the Aetna policy, although he asked for same on October 16, 2015.  The Administrative Record is clear that the UPS Claims Review Committee received and responded to that request.  (AR 1583).  Based on a review of the Administrative Record, Holmes' argument that he did not receive

requested Plan documents lacks merit and his claim for relief based on such an alleged omission must be denied.  Accordingly, defendants cannot be liable for allegedly failing to produce Plan documents.

## IV. Conclusion

For the reasons set forth above, Holmes' claim for the denial of ERISA benefits is DENIED as time-barred.  To the extent his claim for disability benefits arises out of his alleged inability to perform the position of Financial Analyst and is not time-barred, defendants' determination that his condition did not disable him from that position is not arbitrary and capricious and is AFFIRMED.  Holmes' motion for judgment on the administrative record (Doc. 31) is DENIED and defendants' motion for judgment on the administrative record (Doc. 32) is GRANTED. Defendant's request that the court strike Holmes' exhibits is DENIED AS MOOT as any consideration of those exhibits does not alter the court's conclusions here.

**IT IS SO ORDERED.**

Dated:  June 20, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 20, 2017, by electronic and/or ordinary mail.


s/Marcia Beauchemin
Deputy Clerk