UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP J. HOLMES,   CASE NO. 16-CV-11538
                    HON. GEORGE CARAM STEEH
         Plaintiff,

v.

AETNA LIFE INS. CO. ET AL.,

         Defendants.
_____/

# ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

This is an Employment Retirement Income Security Act ("ERISA") case brought by plaintiff Philip J. Holmes for the denial of long term disability ("LTD") and short term disability ("STD") benefits against Defendants Aetna Life Insurance Co. ("Aetna") and the United Parcel Services of American Welfare Plan (the "Plan"). The parties filed cross-motions for judgment on the Administrative Record. On June 20, 2017, this court entered an order granting Defendants' motion and denying Plaintiff's motion. Now before the court is Plaintiff's motion for reconsideration.

Local Rule 7.1(h) provides that a court will not grant motions for reconsideration "that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." The movant bears a

heavy burden and "must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.; see also DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 921 (E.D. Mich. 2003). Plaintiff has not met his burden here.

Plaintiff seeks reconsideration on four grounds: (1) the court applied the wrong standard of review and should have conducted *de novo* review rather than discretionary review; (2) the court improperly found that Plaintiff's claims were time-barred for his failure to exhaust his administrative remedies; (3) the court improperly determined that Plaintiff could not claim a successive disability based on both his foot/ankle and mental impairments and in finding that his Financial Analyst job was a sedentary job; and (4) the court erred in denying his claim that Defendants allegedly failed to produce Plan documents by relying on proof that Defendants produced the STD and LTD Plans and Summary Plan Description ("SPD") when his claim was based on the alleged nonproduction of the Aetna policy. The court addresses each argument below.

1.  **Standard of Review**

Plaintiff argues that the court erred in relying on discretionary review and should have conducted *de novo* review. Plaintiff merely reiterates earlier arguments presented in his original motion which this court has duly considered. The court previously held that Georgia law applied under the policy's choice-of-law provision and conflict of law analysis because the master group policy was issued to UPS, a corporation with its principal place of business in Georgia, and was delivered in Georgia. The Sixth Circuit has recognized that courts generally honor choice-of-law provisions in ERISA plans. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918 (6th Cir. 2006).

The court has carefully considered the legal authority cited by both sides. Whether or not Michigan's Administrative Code 500.2201(c), which prohibits discretionary clauses in insurance contracts issued, advertised or delivered to persons in Michigan, applies when there is a choice-of-law provision calling for the law of a state which permits such a clause, has not been addressed by the Sixth Circuit, but several district courts have weighed in on the issue. *See Morrison v. Unum Life Ins. Co.*, 730 F. Supp. 2d 699, 703-06 (E.D. Mich. 2010) (applying Maine law and holding that Michigan ban on discretionary clauses would not apply); *Fooman v. Liberty*

*Life Assur. Co. of Boston*, 2013 WL 1874738, at *3 (W.D. Mich. May 3, 2013) (applying Pennsylvania law and holding that Michigan ban on discretionary clauses would not apply); *Grimmett v. Anthem Ins. Cos.*, 2012 WL 4477218, at * 9 (E.D. Mich. Sept. 27, 2012) (choice-of-law provision requiring application of Indiana law rendered Michigan's regulatory ban inapplicable.)

While Plaintiff's reliance on *Tikkanen v. Liberty Life Assurance Co. of Boston,* 31 F. Supp. 3d 913, 920-22 (E.D. Mich. 2014) offers some support to his claim that *de novo* review should apply, the court does not find the reasoning of that case to be persuasive. In *Tikkanen*, the court found that Michigan's ban of discretionary clauses did not apply because the policy was not issued or delivered in Michigan. *Id.* at 922. However, in dicta, the *Tikkanen* court suggested that the rule voiding discretionary clauses would apply if a contract document was "issued or delivered to any person" in Michigan regardless of a choice-of-law provision in the policy identifying another state's law as controlling. *Id.* at 921-22. The *Tikkanen* court refused to undertake a choice of law analysis, ruling that the choice-of-law provision in the policy would not apply because the insured employee seeking long term disability benefits was not a party to the policy and the matter was not a contract dispute. *Id.* at 921.

This reasoning is contrary to the Sixth Circuit's holding in *DaimlerChrysler Corp.*, where the Sixth Circuit rejected a similar argument. In that case, the Sixth Circuit analyzed whether a choice-of-law provision in an ERISA plan applied in an interpleader action brought by the pension plan against two claimants each seeking to recover as the surviving spouse. 448 F.3d at 922. One of the claimants argued that the choice-of-law provision did not apply because there was no issue about the rights and duties under a contract. *Id.* at 923. The Sixth Circuit disagreed finding that the pension plan contained a statement of the parties' choice of law to govern the contractual rights and duties created by the plan, and thus, the court looked to the Restatement to conduct a choice of law analysis. *Id.*

Under the Restatement (Second) of Conflicts of Law § 187, the law of the state chosen by the parties to govern their contractual rights and duties is generally applied unless (1) the chosen state has no substantial relationship to the parties to the transaction and there is no other reasonable basis for the parties' choices, or (2) the application of the law of the chosen state would be contrary to a fundamental policy of a state that has a materially greater interest in the determination of the particular issue and that would be the state of the applicable law in the absence of an effective choice of law by the parties. *Id.* at 923. In this case, if the choice-

of-law provision does not apply, Michigan law governs.  Under conflict-of-law analysis, the policy's choice-of-law provision should apply because the policy was issued to UPS in its home state; thus, Georgia has a substantial relationship to the parties.  UPS employs over 350,000 employees in the United States, presumably in all 50 states.  If the choice-of-law clause in the Policy is not honored, then the administrator potentially must adhere to the laws of 50 states, which would undermine Congress' goal of achieving uniformity and efficiency in the administration of ERISA plans.

While Michigan has an interest in providing insured employees with the highest level of judicial review of ERISA benefit determinations possible, Michigan does not have a materially greater interest than Georgia does here, as Georgia has an interest in providing certainty to employers who enter into ERISA plans in their home state that their determinations of benefits will be reviewed under the same standard wherever insured employees file suit.  Because the Plan provides benefits to UPS's employees nationwide, and the master policy was issued to UPS, a corporation with its principal place of business in Georgia, and was delivered in Georgia, the policyholder's interest in having "[i]ts legal obligations determined by a single standard of the law of its home state is patent." *Morrison,* 730 F. Supp. 2d at 705.

Based on the above analysis, the court determines that Georgia law applies and Defendants' benefits determination is reviewed under the discretionary standard. However, even if the *de novo* standard of review applies, the court would affirm Defendants' determination that plaintiff was not disabled.

## 2. Plaintiff's Claims for LTD Benefits Arising out of his On Road Supervisor Position are Time-Barred

Next, Plaintiff claims the court erred when it found that his claim for LTD benefits arising out of his On Road Supervisor position was time-barred for his failure to exhaust the STD benefits or the 26-week Elimination Period. Plaintiff argues the court erred in holding that he was required to exhaust STD benefits before he was eligible for LTD benefits as the Policy only requires that Plaintiff satisfy a 26-week Elimination Period, not the 26-week STD benefit period. Contrary to Plaintiff's argument, the Policy's definition of the Elimination Period does not moot the exhaustion requirement. The Policy states: "Once you meet the LTD test of disability, your long term disability benefits will be payable after the Elimination Period, if any, is over. No benefit is payable for or during the Elimination Period. The Elimination Period is the amount of time you must be disabled before benefits begin." (AR 1460). The Elimination Period is defined as "The first 26 weeks of a period of disability or later of the exhaustion of STD

benefits." (AR 1493). As both parties explain in their papers now before the court, the Policy's definition of the Elimination Period allows an employee to use vacation or sick time before receiving STD benefits such that the Elimination Period may end more than 26 weeks after the employee's disability begins, if the employee has not yet exhausted his STD benefits at 26 weeks. The Elimination Period governs the deadline for filing a LTD claim. The policy provides, "[t]he deadline for filing a long term disability claim is 90 days after the end of the elimination period, if any." (AR 1471). Thus, if any employee exhausts his or her STD benefits more than 26 weeks after the disability begins, because for example, he or she used sick time or vacation time while disabled but before collecting STD benefits, the employee's deadline for filing an LTD claim is not shortened.

Plaintiff claims a disability onset date of February 4, 2014. Thus, the Elimination Period ended on August 4, 2014. Plaintiff did not file his LTD benefit claim until April 16, 2015, well outside the 90-day period contemplated by the Policy. Accordingly, the court properly ruled that Plaintiff's LTD claim was time-barred.

Plaintiff claims that the LTD policy provides that suit can be brought up to 2 years after all internal appeals have been decided. This is a *non sequitur*. The timing for filing a lawsuit does not alter Plaintiff's obligation to

exhaust his administrative remedies.  Accordingly, Plaintiff's objection on the grounds that his LTD claim arising out of his On Road Supervisor position is not time-barred is overruled.

### 3. Successive Disability and Classification of Financial Analyst Position

Plaintiff also objects to the court's order on the grounds that it should have treated his second STD claim as a successive disability and should not have classified the Financial Analyst position as sedentary.  The court properly rejected Plaintiff's successive disability theory as Plaintiff's second STD application stated a disability onset date of December 10, 2014, and listed his position for which he was disabled as Financial Analyst.  In fact, Plaintiff had worked as a Financial Analyst for several months, whereas he had only worked as On Road Supervisor for a mere three days.  Because Plaintiff's second STD claim was not filed as a successive disability application, the court did not err in refusing to analyze the claim in that manner.

Secondly, Plaintiff complains that this court treated the Financial Analyst position as a sedentary position, instead of as a medium position.  While the court noted that Holmes identified the position as sedentary on his own STD application, the court treated the position as requiring a medium physical exertional level during peak season.  (Doc. 41 at 27).

Even under the medium classification, the court found that Defendants'
independent peer reviewers, Dr. Martin Mendelssohn, an orthopedic
surgeon, and Dr. Philip Marion, a specialist in pain management,
considered Plaintiff's alleged foot and ankle impairment and found that his
physical limitations in this area would not prevent Plaintiff from medium
work.  (AR 970-75, 1127-30).

**4.     Monetary Penalty**

Plaintiff also argues that this court erred when it failed to impose
monetary sanctions against Defendants for their failure to produce required
documents under ERISA.  In his motion for reconsideration, Plaintiff does
not dispute that he received the STD Plan, the Summary Plan Description,
and the STD policy but argues he was not provided with Aetna's LTD
policy.  It is unclear from the First Amended Complaint that relief was
sought on this basis.  Paragraph 35 of the First Amended Complaint avers,
"Defendant breached its fiduciary duties to Plaintiff by not providing the
STD Plan and full information on the Plan and appeal requirements."  (Doc.
14 PgID 65).  Similarly, paragraph 40 of the First Amended Complaint
avers that "Defendant failed to produce its full STD Plan, the Summary
Plan Description and/or the Short Term Disability Policy in response to
Plaintiff's request." *Id.* at PgID 66. Given this language in the Amended

Complaint, Plaintiff's argument that this court "apparently misunderstood Plaintiff as arguing that the STD/LTD plans or SPD were not timely provided," but "it was production of the Aetna policy that was at issue" is not well taken.

Plaintiff claims that he requested the Aetna LTD policy from Defendants on October 12, 2015, but did not receive the policy until the Administrative Record was supplemented in this case in February, 2017. However, the Administrative Record reflects that Aetna provided Plaintiff's counsel with a copy of the LTD Policy on May 14, 2015. (AR 390-91).

Even if Plaintiff disputes the Administrative Record showing that he received the Aetna LTD policy, Plaintiff has not shown monetary penalties are appropriate under the circumstances presented here. In a similar case, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 437 (6th Cir. 2006), the Sixth Circuit affirmed the denial of monetary penalties, where although the plan administrator failed to produce the SPD as required by ERISA, plaintiff could show no prejudice where he had received the policy and was represented by counsel with ERISA expertise. Here, plaintiff does not dispute that UPS responded to his October, 2015 request and provided him with many Plan documents (AR 1583); thus, it is unclear why plaintiff's counsel did not follow up with Defendants that he was seeking a copy of

the LTD policy at some point prior to 2017, when he alleges he first received the document, whose existence would have been well known to counsel, an experienced ERISA attorney.

In sum, because the Administrate Record demonstrates that Plaintiff did in fact receive Aetna's LTD policy, and Plaintiff admits defendants produced many other Plan documents, Plaintiff can show no prejudice, and the court declines to award a monetary penalty against defendants or to bar defendants from relying on any discretionary clause in the policy.

For the reasons set forth above, Plaintiff's motion for reconsideration (Doc. 43) is DENIED.

**IT IS SO ORDERED.**

Dated: August 2, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 2, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk